**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| LION 2004 RECEIVABLES TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.  16-723-RGA-MPT |
| | ) | |
| LONG TERM PREFERRED CARE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

## I.    INTRODUCTION

On August 17, 2016, Lion 2004 Receivables Trust ("Lion") filed this action

against Long Term Preferred Care, Inc. ("LTPC") alleging breach of contract (Count I),

indemnification (Count II), and fraud (Count III).[1]  Lion seeks damages of at least $36

million relating to its breach of contract and indemnification claims, as well as attorneys'

fees, costs, and other expenses incurred in connection with this action.[2]  Lion also

seeks pre-judgement and post-judgement interest as allowed by law and/or as provided

by the Commission Purchase Agreement ("CPA").[3]  Currently before the court is LTPC's

motion to dismiss the complaint, pursuant to FED. R. CIV. P. 12(b)(6), "in its entirety with

---

[1] D.I. 2 at 2.  Lion is a Delaware statutory trust and was formed to enter into the transaction at issue.  The beneficial owners of Lion are Imagine International Reinsurance Limited ("Imagine"), an Irish-domiciled company that owns a 90% interest in Lion and Penn Treaty Network America Insurance Company ("Penn Treaty"), a Pennsylvania-domiciled company that has the remaining 10% interest in Lion.  *Id.* at 2. LTPC is a Tennessee corporation with its principal place of business in Franklin, Tennessee.  *Id.*
[2] D.I. 2 at 16-19.
[3] D.I. 2 at 19.

prejudice as untimely under the applicable statute of limitations" and "because Count III of the complaint fails to state a plausible claim of fraud."[4]

## II.    BACKGROUND

On December 30, 2004, Lion and LTPC entered into a Commission Purchase Agreement ("CPA").[5]  Under the CPA, Lion purchased LTPC's right to receive future commissions on over 73,000 individual long-term care insurance policies issued by Allianz Life Insurance Company ("Allianz"), Continental Casualty Company and Affiliates ("CNA"), and General Electric Capital Assurance Company ("GE").[6]  Lion did not undertake any obligations regarding the downline commissions.[7]  Instead, Lion asserts that LTPC entered into an Assignment and Assumption Agreement with TWG Capital, Inc. ("TWG") - to which Lion was not a party - under which TWG assumed LTPC's rights in the relevant insurance contracts, other than the Assigned Commission Rights, as well as LTPC's obligations including the obligation to pay downline commissions.[8]

Within the CPA, LTPC made specific warranties and representations to Lion. Under Section 3.02(m) of the CPA, LTPC represented and warranted that each of the agreements between LTPC and Allianz, CNA, and GE (defined as "Insurance Contracts") have not been "materially amended or modified (including by any prior

---

[4] D.I. 11.
[5] D.I. 2 at 3-4; D.I. 12 at 4.
[6] *Id.*
[7] D.I. 2 at 4.  Downline Commissions are defined as "the share of LTPC's Gross Commissions that it agreed to pay Downline Agents who sold long-term care policies on LTPC's behalf."  D.I. 12 at 6.
[8] D.I. 2 at 4.  Assigned Commission Rights are defined as "the Commission Rights assigned pursuant to the Assignment Contracts as set forth on Exhibit I hereto." D.I. 2-1 at 6.

practice or course of dealing)."[9]   Section 3.02(m) further states that the "Insurance

Contracts provided to [Lion] are the only contracts or agreements that are or were in

effect between [LTPC] and the Insurance Companies with respect to the Assigned

Commission Rights."[10]   Section 3.02(v) of the CPA provides that "[a]ll information

relating to . . . the Assigned Commission Rights or the transactions contemplated by this

Agreement provided by [LTPC] to [Lion] . . . was appropriately and accurately

responsive to [Lion's] written inquires and copies of all documents provided in

connection therewith are true, correct and complete in all material aspects."[11]   In Section

3.02(w), LTPC represented and warranted that "Exhibit I hereto contains certain

information with respect to the Assigned Commission Rights as of November 17, 2004

that is true, correct and complete in all material respects."[12]   Furthermore, Section 6.01

of the CPA, regarding indemnification by LTPC, states that "[LTPC] shall protect,

indemnify and hold [Lion] . . . harmless from and against all Losses and Expenses of

every kind and character resulting from or relating to or arising out of . . . the inaccuracy,

nonfulfillment or breach of any representation, warranty, covenant or agreement made

by [LTPC] in this Agreement."[13]   Lastly, Section 8.06 of the CPA acknowledges that the

_____

[9] D.I. 2-1 at 16.
[10] *Id.*
[11] D.I. 2-1 at 18.
[12] *Id.*
[13] D.I. 2-1 at 24.  "Losses" is defined as "any and all losses, costs, obligations, liabilities, settlement payments, awards, judgements, fines, damages, expenses or other charges (together with interest and penalties thereon, if any)."  D.I. 2-1 at 9.  "Expenses" is defined as "any and all reasonable costs, fees and expenses incurred in connection with investigating, defending or asserting any claim, action, suit or proceeding incident to any matter indemnified against hereunder (including, without limitation, court filing fees, court costs, arbitration fees or costs, witness fees, and fees and disbursements of legal counsel, paralegals, investigators, expert witnesses, accountants and other

3

"respective representations, warranties and statements by each of the parties hereto set forth in or made pursuant to this Agreement shall remain in full force and effect and survive the Closing."[14]

On June 18, 2012, Lion and LTPC entered into a Tolling Agreement for indemnification and/or damages under the CPA relating to commissions for certain Allianz policies.[15]  Subsequently, in 2013, Lion and LTPC executed a Supplemental Tolling Agreement for indemnification and/or damages pursuant to the CPA relating to commissions under certain CNA and GE policies.[16]  Both tolling agreements provide that the parties desired to "delay the filing of litigation and to toll the applicable statute of limitations and/or the running of laches."[17]  Each tolling agreement remained effective unless either party delivered to the other a written notice of the termination of the agreement and "terminated immediately" should Lion file a lawsuit against LTPC.[18]

Lion's complaint alleges that LTPC breached its representations and warranties under the CPA by providing certain documents that were inaccurate, untrue, incorrect and incomplete, as well as by providing inaccurate, untrue, incorrect and incomplete information with respect to a significant number of policies in Exhibit I to the CPA.[19] Lion seeks to recover lost commission income which, it argues, constitutes damages

---

professionals) and shall include those incurred in connection with the enforcement of this Agreement, including without limitation the indemnification provisions of Article VI." D.I. 2-1 at 7.

[14] D.I. 2-1 at 28.
[15] D.I. 2-2 at 2; D.I. 2-3 at 2.
[16] D.I. 2-3 at 2.
[17] D.I. 2-2 at 2; D.I. 2-3 at 2.
[18] *Id.*
[19] D.I. 2 at 6.

caused by LTPC's breach of its contractual representations and warranties under the CPA.[20]  Additionally, Lion seeks to recover commissions it paid to downline agents in excess of the commissions that LTPC represented would be payable.[21]

## III.  GOVERNING LAW

In its motion to dismiss, LTPC maintains the complaint is "untimely under the applicable statute of limitations" and "because Count III of the [c]omplaint fails to state a plausible claim of fraud" pursuant to FED. R. CIV. P. 12(b)(6).[22]  It argues that Lion's claims are all governed by a three year statute of limitations under 10 Del. C. § 8106, which began when the CPA was executed on December 30, 2004 and expired on December 30, 2007.[23]  LTPC further asserts that Lion fails to allege facts sufficient to toll the statute of limitations and, alternatively, even if the statute of limitations is tolled, Lion had both actual notice and inquiry notice more than three years before filing this action and entering into the Tolling Agreements.[24]  Lastly, LTPC argues that the fraud claim (Count III) should be dismissed "because Lion has neither alleged that LTPC breached a duty imposed by operation of law nor pled damages caused by the alleged fraud distinct from those purportedly caused by the Contract Claims."[25]

Under 10 Del. C. § 8106, claims "'arising from a promise,' including fraud, must be brought within three years after the claim has accrued."[26]  Delaware courts have held

---

[20] *Id.* at 2.
[21] *Id.*
[22] D.I. 11.
[23] D.I. 12 at 2.
[24] *Id.*
[25] D.I. 12 at 3.
[26] *Van Lake v. Sorin CRM USA, Inc.,* 2013 WL 1087583, at *6 (Del. Super. Ct. Feb. 15, 2013); *see also* 10 Del. C. § 8106.

5

that "[t]he statute of limitations begins to run when a plaintiff's claim accrues, which occurs at the moment of the wrongful act and not when the effects of the act are felt."[27]

Delaware courts recognize three doctrines which may toll the statute of limitations:  (1) inherently unknowable injuries, (2) fraudulent concealment, and (3) equitable tolling.[28]  However, "[n]o theory will toll the statute beyond the point where plaintiff was objectively aware, or should have been aware, of facts giving rise to the wrong."[29]  Delaware courts have determined inquiry notice exists "when person[s] of ordinary intelligence and prudence [have facts sufficient to place them] on inquiry, which, if pursued, would lead to the discovery of the injury."[30]

The doctrine of inherently unknowable injuries states that the statute of limitations "will not run where it would be practically impossible for a plaintiff to discover the existence of a cause of action.  No objective or observable factors may exist that might have put the [plaintiff] on notice of an injury, and the [plaintiff] bears the burden to show that they were 'blamelessly ignorant' of both the wrongful act and the resulting harm."[31]  Similarly, the doctrine of fraudulent concealment tolls the limitations period "when a defendant has fraudulently concealed from a plaintiff the facts necessary to put him on notice of the truth.  Under this doctrine, a plaintiff must allege an affirmative act

---

[27] *Van Lake v. Sorin CRM USA, Inc.,* 2013 WL 1087583, at *6 (Del. Super. Ct. Feb. 15, 2013) (citing *Airport Bus. Ctr. v. LLLP v. Sun Nat'l Bank,* 2012 WL 1413690, at *7 (Del.Super.)).

[28] *Gregorovich v. E.I. du Pont de Nemours*, 602 F. Supp. 2d 511, 518–19 (D. Del. 2009) (citing *In re Tyson Foods, Inc.*, 919 A.2d 563, 584 (Del. Ch. 2007)).

[29] *Id.*

[30] *Smith v. Whelan*, Civ. A. 11 1188 RGA, 2013 WL 3169373, at *2 (D. Del. June 21, 2013), aff'd, 556 Fed. Appx. 177 (3d Cir. 2014)(unpublished) (citing *Eluv Holdigns (BVI) Ltd. v. Dotomi, LLC*, 2013 WL 1200273, at *7 (Del. Ch. Mar. 26, 2013)).

[31] *In re Tyson Foods, Inc.*, 919 A.2d 563, 585 (Del. Ch. 2007).

of 'actual artifice' by the defendant that either prevented the plaintiff from gaining knowledge of material facts or led the plaintiff away from the truth."[32]

Federal Rule of Civil Procedure 9(b) requires that "in alleging fraud . . . a party must state with particularity the circumstances constituting fraud. . . ."[33]  The elements of fraud consist of:

> (1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance.[34]

As a general rule, "where an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort."[35]  Under Delaware law, plaintiffs may not 'bootstrap' a claim of fraud onto a breach of contract claim by merely including the words 'fraudulently induced.'[36]

Federal Rule of Civil Procedure 12(b)(6) governs a motion to dismiss for failure to state a claim upon which relief can be granted.  The purpose of a motion under Rule 12(b)(6) is to test the sufficiency of the claim, not to resolve disputed facts or decide the merits of the case.[37]  "The issue is not whether a claimant will ultimately prevail, but

---

[32] *Id.*
[33] FED. R. CIV. P. 9(b).
[34] *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992).
[35] *Pinkert v. John Olivieri, P.A.*, 2001 WL 641737, at *5 (D. Del. May 24, 2001).
[36] *Pinkert v. John Olivieri, P.A.*, 2001 WL 641737, at *5 (D. Del. May 24, 2001) (citing *Iotex Communications, Inc. v. Defries*, 1998 WL 914265, at *5 (Del. Ch. Dec. 21, 1998)).
[37] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

whether the claimant is entitled to offer evidence to support the claims."[38]  A motion to

dismiss may be granted only if, after "accepting all well-pleaded allegations in the

[pleading] as true, and viewing them in the light most favorable to the [claimant], [the

claimant] is not entitled to relief."[39]  While the court draws all reasonable factual

inferences in the light most favorable to the claimant, it rejects unsupported allegations,

"bald assertions," and "legal conclusions."[40]

To survive a motion to dismiss, a claimant's factual allegations must be sufficient

to "raise a right to relief above the speculative level . . . ."[41]  Claimants are therefore

required to provide the grounds of their entitlement to relief beyond mere labels and

conclusions.[42]  Although heightened fact pleading is not required, "enough facts to state

a claim to relief that is plausible on its face" must be alleged.[43]  A claim has facial

---

[38] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotations and citations omitted); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 563 n.8 (2007) ("[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.").

[39] *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (citing *Burlington*, 114 F.3d at 1420).

[40] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted); *see also Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 f.3d 405, 417 (3d Cir. 1997) (citations omitted) (rejecting "unsupported conclusions and unwarranted inferences"); *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("It is not . . . proper to assume [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged.").

[41] *Twombly*, 550 U.S. at 555 (citations omitted); see also *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

[42] *See Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[43] *Twombly*, 550 U.S. at 570; *see also Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) ("In its general discussion, the Supreme Court explained that the concept of a 'showing' requires only notice of a claim and its grounds, and

plausibility when a claimant pleads factual content sufficient for the court to draw the reasonable inference that the opposing party is liable for the misconduct alleged.[44] Once stated adequately, a claim may be supported by showing any set of facts consistent with the allegations in the complaint.[45] Courts generally consider only the allegations contained in the pleading, exhibits attached to the pleading, and matters of public record when reviewing a motion to dismiss.[46]

## IV.    DISCUSSION

### A.    Statute of Limitations and Tolling Analysis

LTPC contends Lion's claims are untimely under the three year statute of limitations imposed by 10 Del. C. § 8106.[47]  It argues Lion's claims accrued on December 30, 2004 - the date of the closing of the CPA - "well over three years before Lion filed this lawsuit" and are not tolled.[48]  In addition to arguing Lion's claims are untimely, LTPC maintains Lion was on actual and/or inquiry notice regarding all of its claims, and therefore, the statute of limitations cannot be tolled under either the inherently unknowable injuries doctrine or the fraudulent concealment doctrine.[49]

Ascertaining whether a claim is time-barred under a statute of limitations requires consideration of three elements:

---

distinguished such a showing from 'a pleader's bare averment that he wants relief and is entitled to it.'") (quoting *Twombly*, 550 U.S. at 555 n.3).

[44] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

[45] *Twombly*, 550 U.S. at 563 (citations omitted).

[46] *See, e.g., Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).

[47] D.I. 11; D.I. 12 at 9-18.

[48] D.I. 12 at 9.

[49] D.I. 12 at 10-18.

> (1) the date the cause of action accrued, (2) whether the cause of action has been tolled, and (3) if the cause of action has been tolled, whether and when a plaintiff was placed on inquiry notice of his claims.[50]

To determine the timeliness of the complaint, the court must first discern the date of accrual of Lion's claims. Lion alleges three claims - breach of contract (Count I), indemnification (Count II), and fraud (Count III) - each stemming from LTPC's alleged misrepresentations regarding certain, but different long-term care policies and its obligations under the CPA.

As to Lion's breach of contract claim, the court finds that this claim accrued on December 30, 2004 - the closing date of the CPA. "Under Section 8106, the period of limitations normally begins to run at the time of the wrongful act."[51] Similarly, with respect to Lion's indemnification claim, the court finds that this claim accrued on December 30, 2004 - the date of alleged breach and injury to Lion.[52] Lastly, regarding Lion's fraud claim, this claim also accrued on December 30, 2004. On this date, during the negotiation of the CPA, LTPC's alleged fraud was successfully perpetrated.[53] Lion's

---

[50] *Eluv Holdings (BVI) Ltd. v. Dotomi, LLC*, 2013 WL 1200273, *6 (Del. Ch. Mar. 26, 2013).

[51] *Coleman v. Pricewaterhousecoopers, LLC*, 854 A.2d 838, 842 (Del. 2004).

[52] D.I. 12 at Ex. B; *See Stifel Financial Corp. v. Cochran*, 809 A.2d 555, 559 (Del. Ch. 2002) (citations omitted) (". . . [B]ecause indemnification is a right conferred by contract, under statutory auspice, actions seeking indemnification are subject to the three year limitations period that encompasses both 'actions based on a promise' and those based 'on a statute.'"); *see also* 10 Del. C. § 8106 (No action based on a promise or a statute may be brought after three years from the accruing of the cause of such action.); *Certainteed Corp. v. Celotex Corp.*, 2005 WL 217032, at *5 (Del. Ch. Jan. 24, 2005) (". . . [I]n the case of counts for breach of contract and misrepresentation, where claims involve direct injury . . . timeliness is to be measured by the statute of limitations for breach of contract and torts, respectively, with accrual occurring on the date of breach or injury, absent tolling.").

[53] D.I. 2 at 10-11.

complaint was filed on August 17, 2016, and is clearly time-barred under 10 Del. C.   §
8106, unless a tolling doctrine applies.

Lion contends the statute of limitations was tolled with respect to its breach of
contract, fraud and indemnification claims because "LTPC fraudulently concealed its
breaches of its representations and warranties" and because "LTPC's breaches, and
the facts evidencing such breaches, were unknown and inherently unknowable to Lion,
and Lion was blamelessly ignorant of them."[54]   LTPC responds that Lion failed to allege
an "affirmative, independent act of concealment separate and apart from the alleged
underlying wrongdoing" in regards to its fraudulent concealment claim and, with respect
to Lion's inherently unknowable claim, the alleged injuries Lion suffered "could have
been uncovered by investigation."[55]   Alternatively, LTPC argues that even if the statute
of limitations were tolled, Lion was on inquiry notice of any alleged breach.[56]

To toll the statute of limitations under the theory of fraudulent concealment, there
must be "an affirmative act of concealment or some misrepresentation that was
intended to 'put a plaintiff off the trail of inquiry' until such time as the plaintiff is put on
inquiry notice."[57]   However, "where a plaintiff alleges some affirmative act by the
defendant that '. . . led the plaintiff away from the truth,' the plaintiff carries his burden of
pleading facts sufficient to demonstrate the applicability of this tolling doctrine."[58]

---

[54] *Id.* at 12-13.
[55] D.I. 12 at 11-13.
[56] *Id.* at 13-18; D.I. 18 at 5-9.
[57] *Van Lake v. Sorin CRM USA, Inc.*, 2013 WL 1087583, at *9 (Del. Super. Feb.
15, 2013) (citing *Winner Acceptance Corp.*, 2008 WL 5352063, at *15 (Del. Ch. Dec. 23,
2008)).
[58] *Van Lake v. Sorin CRM USA, Inc.*, 2013 WL 1087583, at *10 (Del. Super. Feb.
15, 2013).

The court finds that Lion has adequately pled fraudulent concealment for tolling purposes.  In its complaint, Lion identifies two separate acts of concealment:  LTPC's misrepresentation of future commission rates and LTPC's concealment of the full terms of its agreement with Allianz.[59]  Lion's complaint provides sufficient facts that allege LTPC engaged in affirmative acts designed to prevent Lion from discovering material information about certain Allianz policies.

To toll the statute of limitations under the theory of inherently unknowable injuries, a plaintiff must show the alleged injury is "inherently unknowable and the [plaintiff] is blamelessly ignorant of the wrongful act and the injury complained of."[60] "These facts must usually be observable or objective factors that would alert laymen to the problem."[61]

Lion has adequately pled inherently unknowable injuries for tolling purposes.  In its complaint, Lion states neither it nor Imagine were aware of any objective information suggesting LTPC had breached its representations and warranties until an October 2009 review and valuation of Lion's investment was conducted.[62]  At that time, it became evident to Imagine that gross commission rates for both Allianz and CNA policies were lower than expected or completely terminated.[63]  Indeed, Lion asserts the earliest it could have possibly known about any breach was September 2011.[64]  Even if

---

[59] D.I. 16 at 12; D.I. 2 at 12.
[60] *Van Lake v. Sorin CRM USA, Inc.*, 2013 WL 1087583, at *8 (Del. Super. Feb. 15, 2013) (citing *Island Farm, Inc. v. Master Sidlow & Assocs., P.A.*, 2007 WL 2758775, at *2 (Del. Super. Sept. 20, 2007)).
[61] *Id.*
[62] D.I. 2 at 13.
[63] *Id.* at 13-14.
[64] *Id.* at 13-16.

the October 2009 time frame is when the limitations period began to run, the parties

entered into a tolling agreement on June 18, 2012 which stopped the limitations period

at that time, and another tolling agreement in 2013.  Accepting the facts in Lion's

complaint as true, Lion has met its burden under Rule 12(b)(6).[65]

     The final inquiry the court must make in determining whether a claim is time-

barred is to ascertain when the plaintiff was on inquiry notice of its claims.[66]  "Inquiry

notice does not require a plaintiff to have actual knowledge of a wrong, but simply an

objective awareness of the facts giving rise to the wrong."[67]  In examining whether the

plaintiff was on inquiry notice, the court determines whether there were any "'red flag[s]'

that clearly and unmistakably would have led a prudent person of ordinary intelligence

to inquire and if pursued, would have led to discovery of the elements of the claim being

asserted."[68]  "Thus, the critical inquiry for purposes of this motion to dismiss is:  w[as]

[p]laintiff[] entitled to rely on [d]fendant['s] representations for as long as [he] did . . .?"[69]

     LTPC argues "the supposed injuries caused by these alleged misrepresentations

were not inherently unknowable because they could have been uncovered by

---

[65] *Van Lake v. Sorin CRM USA, Inc.*, 2013 WL 1087583, at *8 (Del. Super. Feb. 15, 2013) (citing *Island Farm, Inc. v. Master Sidlow & Assocs., P.A.*, 2007 WL 2758775, at *2 (Del. Super. Sept. 20, 2007)).

[66] *Van Lake v. Sorin CRM USA, Inc.*, 2013 WL 1087583, at *7 (Del. Super. Feb. 15, 2013) (citing *Winner Acceptance Corp.*, 2008 WL 5352063, at *15 (Del. Ch. Dec. 23, 2008)).

[67] *Van Lake v. Sorin CRM USA, Inc.*, 2013 WL 1087583, at *7 (Del. Super. Feb. 15, 2013) (citing *E.I. duPont de Nemours and Co. V. Medtronic Vascular, Inc.*, 2013 WL 261415, at *11 (Del. Super. Jan. 18, 2013)).

[68] *Van Lake v. Sorin CRM USA,* Inc., 2013 WL 1087853, at *7 (Del. Super. Feb. 15, 2013) (citing *Coleman v. PricewaterhouseCoopers LLC*, 854 A.2d 838, 843 (Del. 2004)).

[69] *In re Dean Witter Partn. Litig.*, 1998 WL 442456, at *1 (Del. Ch. July 17, 1998), aff'd, 725 A.2d 441 (Del. 1999).

investigation."[70]  Specifically, LTPC asserts that because Lion knew in October 2009 that the average gross commission rates were lower than projected, this was a "red flag" that put Lion on inquiry notice and bars its claims.[71]  Lion responds that its beneficial owner, Imagine, "reasonably believed that this variance was due to mortality, morbidity and/or lapse rates exceeding those assumed in the initial projections - none of which would have suggested a breach by LTPC of its representations and warranties in the CPA."[72]  Lion also counters that even if it had reason to investigate the lower than expected gross commission rates, the CPA did not give Lion "the right to inspect the records that would have contradicted the representations."[73]

LTPC further argues that, with respect to the downline commissions, Lion was on inquiry notice "of all the facts underlying its claims over three years before the parties executed their Supplemental Tolling Agreement."[74]  However, Lion was not initially responsible for paying downline commissions, and maintains it was unaware of the issue until late 2011 shortly before it became responsible for paying them.  Further, as analyzed above, even if October 2009 is operative date, this action was brought within three years thereafter.

Accepting the well-pled allegations as true, Lion has pled sufficient facts to support that it had no inquiry notice obligation to investigate LTPC's alleged wrongful conduct until late 2011.  On November 16, 2011, LTPC received a letter from Lion

---

[70] D.I. 12 at 13.
[71] D.I. 12 at 13-17; D.I. 18 at 5-9.
[72] D.I. 2 at 13; D.I. 16 at 17.
[73] D.I. 16 at 5.
[74] D.I. 12 at 18.

seeking indemnification and/or damages under the CPA.[75]  Within seven months thereafter, the parties entered into a Tolling Agreement on June 18, 2012, well within the three year limitation, and then executed a Supplemental Tolling Agreement in 2013.[76]

In conclusion, the court finds that Lion adequately alleged that the doctrines of inherently unknowable injuries and fraudulent concealment apply to the alleged breach of contract, fraud and indemnification claims.

### B.        Failure to State a Claim (Fraud)

In the third count of its complaint, Lion alleges LTPC "induced Lion to enter into the CPA through fraudulent misrepresentations."[77]  Specifically, Lion avers LTPC misrepresented that Allianz's duty was to pay downline commissions for the life of certain policies, while in reality Allianz was only obligated to pay downline commissions for the first ten years on its policies.[78]  LTPC moves to dismiss Lion's allegation because Lion is attempting to "'bootstrap' a breach of contract claim into a tort claim" and because Lion cannot plead damages caused by fraud distinct from those caused by the alleged breach of the CPA.[79]  Specifically, LTPC states "the supposed misrepresentations relate exclusively to alleged obligations under the CPA" which, under Delaware law, bar a claim of fraud where a claim of breach of contract is

---

[75] D.I. 2-2 at 2; *see also* D.I. 12 at Ex. B.
[76] D.I. 2-2; D.I. 2-3.
[77] D.I. 2 at 10.
[78] D.I. 2 at 10-11.
[79] D.I. 12 at 19-20; D.I. 18 at 9-10.

15

available.[80]

Lion's allegation of fraud relates to LTPC's failure to accurately and completely disclose the details of Lion's rights to receive commissions from Allianz prior to the closing date of the CPA.  Stated another way, Lion's fraud claim is collateral to its breach of contract claim, and is thus, not barred from being asserted.

In its complaint, Lion states that "LTPC induced Lion to enter into the CPA through fraudulent misrepresentations."[81]  Included are misrepresentations of the terms underlying the agreement between LTPC and Allianz, and the true nature of Allianz's obligations to pay downline commissions on certain policies.[82]

LTPC also contends that Lion's complaint fails to allege damages separate and distinct from those of the alleged breach of contract.[83]  However, the complaint plainly states ". . . Lion [has] suffered damages as a result of its reliance on such false representations."[84]  Under Delaware law, this is enough to satisfy the pleading requirements for fraud.[85]  Additionally, Lion alleges damages that are independent of its

---

[80] D.I. 12 at 29; *See Pinkert v. John Olivieri, P.A.*, 2001 WL 641737, at *5 (D. Del. May 24, 2001) ("As a general rule under Delaware law, where an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort.").

[81] D.I. 2 at 10; D.I. 16 at 20.  *See Universal American Corp. v. Partners Healthcare Solutions Holding, L.P.*, 176 F. Supp. 3d 387, 403 (D. Del. 2016), where this court recognized assertions in the complaint that contractual statements were false, that is sufficient to properly allege common law fraud.

[82] D.I. 2 at 10-11; D.I. 16 at 20-21.

[83] D.I. 12 at 24; D.I. 18 at 10.

[84] D.I. 2 at 11, 18.

[85] *See Latesco, L.P. v. Wayport, Inc.*, 2009 WL 2246793, at *9 (Del. Ch. Jul. 24, 2009) (". . . all that plaintiffs need to plead at this stage is that they were harmed by the fraudulent conduct.").

16

breach of contract claim.  Lion relies on Section 6.03 of the CPA which provides that the deductible and the limit on indemnifications are void in cases of fraud.[86]  Taken as a whole, Lion's complaint adequately pleads the elements of fraud in accordance with FED. R. CIV. P. 9(b) and applicable Delaware law.

## V.    ORDER AND RECOMMENDED DISPOSITION

For the reasons contained herein, it is recommend that:

(1) LTPC's motion to dismiss the complaint in its entirety with prejudice as untimely under the applicable statute of limitations (D.I. 11) be DENIED as to Counts I, II, and III; and

(2) LTPC's motion to dismiss the complaint for failure to state a plausible claim of fraud (D.I. 11) be DENIED as to Count III.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served a copy of this Report and Recommendation.  Objections and responses are limited to ten (10) pages each.

The parties are directed to the Court's Standing Order in Non-Pro Se matters for Objections Filed under FED. R. CIV. P. 72, dated October 9, 2013, a copy of which is available on the Court's website, www.ded.uscourts.gov.

Dated: March 20, 2017                    /s/ Mary Pat Thynge
                                         UNITED STATES MAGISTRATE JUDGE

---

[86] D.I. 16 at 23; D.I. 2-1 at 25.